**Linda NEISZ, individually, and on behalf of her parent, Melba Neisz, Plaintiff,**

v.

**PORTLAND PUBLIC SCHOOL DISTRICT, Defendant.**

**Civ. No. 87–1017–MA.**

United States District Court, D. Oregon.

May 20, 1988.

---

Stephen L. Brischetto, Baldwin & Brischetto, Portland, Or., for plaintiff.

Jeffrey Millner, John Osburn, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for defendant.

## OPINION

MARSH, District Judge.

This is a civil action for reasonable attorney fees pursuant to the Handicapped Children's Protection Act of 1986 (hereinafter

"HCPA"), Pub.L. No. 99–372, 100 Stat. 796, 797 (codified as amended at 20 U.S.C. Sec. 1415). Plaintiff, Linda Neisz, is a 16–year-old special needs student currently residing in Portland, Oregon. Defendant is the Portland Public School District (hereinafter "the District"). For the reasons set forth below, plaintiff's motion for attorney fees is granted in the amount of $7,759.20.

FACTS

Plaintiff was paralyzed as a result of an accident in the summer of 1986. At the time of the accident, plaintiff was enrolled at Glenhaven Middle School (hereinafter "Glenhaven") in Portland. She lived with her mother inside the geographical confines of the District. Plaintiff was treated for her injury at Emanuel Hospital in Portland. Upon her release from the hospital in December, 1986, plaintiff was placed in the Rest Harbor Nursing Home (hereinafter "Rest Harbor"), located within neighboring Gresham School District.

District staff members initiated an Individual Education Plan (hereinafter "IEP") for plaintiff in January, 1987. The IEP was finalized in April, 1987, with a review date set for April, 1988. Plaintiff continued to receive services from the District as a Glenhaven student until the end of her eighth grade school year in June, 1987.

Prior to the start of the 1987–88 school year, the District determined that plaintiff could not enter the ninth grade at Madison High School (hereinafter "Madison") because of her continued placement at Rest Harbor. This determination gave rise to the administrative hearing and federal court litigation which form the basis of the present motion.

*Procedural History*

On August 25, 1987, plaintiff's counsel wrote the District and requested a due process hearing pursuant to 20 U.S.C. § 1415(b)(2). He also requested that the District provide assurance by September 4, 1987, that plaintiff could continue as a District student pending the results of the due process hearing. Having received no direct response to this letter, plaintiff filed on September 9, 1987, a motion in federal district court seeking a temporary restraining order (hereinafter "TRO") prohibiting the District from discontinuing services to plaintiff pending resolution of the due process hearing.

Hearings on the TRO motion were held on September 10 and 14, 1987. Plaintiff's counsel indicates in his affidavit that attorneys for the District, immediately prior to the September 10 hearing, advised him that they would inform the court of the District's intention to grant plaintiff a due process hearing. The September hearings did not produce a TRO, and a status conference to be held before me was scheduled for October 2, 1987. ·

During the October 2, 1987, status conference, counsel for the District stated that the District would follow any decision rendered by the due process hearing officer. On October 7, 1987, I filed an opinion denying plaintiff's motion for a TRO. I concluded that plaintiff did not then have a current educational placement at Madison within the "stay put" provision of 20 U.S.C. § 1415(e)(3) and that, insofar as plaintiff had not established that she was unable to attend school in Gresham, the District's refusal to serve plaintiff did not deprive her of a free appropriate public education.

The same day, October 7, 1987, the hearings officer advised the parties of her decision in connection with the due process hearing held the day before. The hearings officer issued her Findings of Fact, Conclusions of Law, and Order on October 12, 1987. She held that the District had unreasonably determined that it was not responsible for plaintiff's education. She also concluded that the District, by its failure to give plaintiff written notice of its intention to terminate her IEP, had violated 20 U.S. C. § 1415(b)(1)(C). The District was ordered to provide a free appropriate public education to plaintiff until (1) it complied with the written prior notice requirements of state and federal law, or (2) a proper legal determination was made that plaintiff was no longer a resident of the District. Consistent with its statement during the October 2, 1987, status conference, the District did not appeal the hearing officer's

decision. Plaintiff was ultimately enrolled at Madison after securing a foster home placement within District boundaries.

*Discussion*

■ The HCPA provides in pertinent part:

> In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as a part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party.

20 U.S.C. § 1415(e)(4)(B)

Plaintiff clearly "prevailed" in the administrative proceeding, and I am convinced that the fees and costs reasonably incurred in connection therewith are compensable. The legislative history of Section 1415(e) is replete with references to "award [of] fees to parents who prevail in administrative proceedings." 131 Cong.Rec.H. 9966 (Nov. 12, 1985) (remarks of Rep. Williams). The clear weight of case authority also supports this view. *See, e.g., Dodds v. Simpson,* 676 F.Supp. 1045 (D.Or.1987); *Michael F. v. Cambridge School Dept.,* 1986–87 EHLR Dec. 558:394 (D.Mass.1987) [available on WESTLAW, 1987 WL 7752]; *School Bd. of Prince William County v. Malone,* 662 F.Supp. 999 (E.D.Va.1987); *Unified School Dist. No. 259 v. Newton,* 673 F.Supp. 418 (D.Kan.1987); *Prescott v. Palos Verdes Peninsula Unified School Dist.,* 659 F.Supp. 921 (C.D.Cal.1987); *Mathern v. Campbell County Children's Center,* 674 F.Supp. 816 (D.Wyo.1987); *Kristie W. v. Graham Indep. School Dist.,* 663 F.Supp. 86 (N.D.Tex.1987); *Burpee v. Manchester School Dist.,* 661 F.Supp. 731 (D.N.H.1987). *Contra Rollison v. Biggs,* 660 F.Supp. 875 (D.Del.1987). The District all but concedes in its memorandum that fees associated with the due process hearing are recoverable by plaintiff; the point was not contested at oral argument on April 18, 1988.

The District does object to plaintiff's recovery of fees associated with efforts to obtain injunctive relief in federal court. Its position is straightforward: plaintiff was not awarded the TRO, so she should not be awarded fees for the attempt. I disagree. Although plaintiff did not obtain the interim relief she sought, I find that her efforts to do so were both reasonable and significantly related to the ultimate success achieved such that the associated fees and costs are compensable under HCPA.

With the start of the 1987–88 school year fast approaching, plaintiff's counsel requested a due process hearing on August 25, 1987. Although the District, by virtue of O.A.R. 581-15–088(2), had 45 days within which to conduct the requested due process hearing, I find it significant that no direct response to plaintiff's request was forthcoming until immediately before the hearing on September 10, 1987. School had already started. I also consider the District's commitment during the October 2, 1987, status conference that it would not appeal the due process hearing officer's decision. While I have no doubt that this commitment was made in the spirit of compromise and with the intent to avoid any further disruption to plaintiff's education, the status conference provided a setting outside of which the promise may not have been made. In short, because plaintiff's pursuit of injunctive relief in federal court was instrumental in the achievement of her primary goal, i.e., to attend Madison, the associated fees and costs are recoverable.

"Although [20 U.S.C. § 1415(e)(4)(B)] grants the district court discretion to award fees, Congress intended [it] to be interpreted consistent with fee provisions under 42 U.S.C. § 1988 and Title VII of the Civil Rights Act of 1964." *Abu–Sahyun (Lana) v. Palo Alto Unified School Dist.,* 843 F.2d 1250, 1252 (9th Cir.1988) citing S.Rep. No. 99–112, 99th Cong., 2d Sess., reprinted in 1986 U.S.Code Cong. & Admin. News 1798, 1803–05. "Under these latter provisions, the district court's discretion to deny a fee award to a prevailing plaintiff 'has been interpreted very narrowly.'" *Id.,* quoting *Ackerly Communications, Inc. v. City of Salem,* 752 F.2d 1394, 1396 (9th Cir.) (42 U.S.C. § 1988), *cert. denied,* 472 U.S. 1028, 105 S.Ct. 3503, 87 L.Ed.2d 634 (1985).

Under 42 U.S.C. § 1988, "[a] district court may award attorney's fees to a plaintiff whose suit has prompted defendants to take action to satisfy his demands." *Harris v. McCarthy*, 790 F.2d 753, 759 (9th Cir.1986). Such is the case here, and the fee award should not be reduced because plaintiff did not obtain formal success on her motion for injunctive relief. As the Supreme Court indicated in *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983) (construing 42 U.S.C. § 1988), "[t]he result is what matters." Plaintiff "may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Id.* at 436, n. 11, 103 S.Ct. at 1941, n. 11.

The calculation of appropriate attorney fees begins with a lodestar figure. *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir.1987). This figure is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *Miller*, 827 F.2d at 621; *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir.1987).

There is a strong presumption that the lodestar figure represents a reasonable fee. *Miller*, 827 F.2d at 621; *Jordan*, 815 F.2d at 1262. In this case, as 20 U.S.C. § 1415(e)(4)(C) provides that no bonus or multiplier may be used in calculating the fees to be awarded under the HCPA, I need not consider the factors which may have allowed such an adjustment.

### Hours Reasonably Expended

■ Plaintiff's counsel has submitted detailed records of the hours expended on this case. Richard Baldwin, attorney, attests that he expended a total of 2.5 hours on this matter. Mary Berra, paralegal, attests that she spent 6.24 hours on the case. After reviewing the file of this case, as well as the itemized billing, I find the hours expended on this litigation, except as indicated below, to be reasonable.

### Reasonable Hourly Rate

Plaintiff requests that the hours reasonably expended on this case be multiplied by an hourly rate as follows:

| Stephen Brishetto | 61.56 hours × $125.00 |
| Richard Baldwin | 2.50 hours × $100.00 |
| Mary Berra | 6.24 hours × $ 30.00 |

Filing and copy costs totalled $127.00. For the reasons stated below with respect to Mr. Brischetto, and in the absence of any objections with respect to Mr. Baldwin and Ms. Berra, I find plaintiff's rate proposal to be reasonable.

Aside from what is noted below, neither the memoranda submitted, nor oral argument, brought to light any unreasonable expenditure of time on the part of plaintiff's counsel. The District opposes the compensation of plaintiff's counsel for the time he spent in ascertaining Gresham's position on the matter. To the contrary, such efforts should be encouraged as pragmatic, problem-solving attempts to identify areas of dispute so that a mutually acceptable solution can be found.

■ The District also opposes the hourly rate, $125, charged by plaintiff's counsel. While this amount may be on the upper end of his rate scale, plaintiff's counsel has 11 years experience in state and federal court practice and has a specialty not generally available among the private bar. The affidavits submitted on his behalf support the reasonableness of the requested rate. The District, on the other hand, submitted no affidavits to indicate that the rate is excessive. The District cites *Coulter v. State of Tenn.*, 805 F.2d 146 (6th Cir.1986), for the proposition that the appropriate fee would be the actual market rate for similar work. This may be true, but the District offers nothing more than a suggestion that a rate of $90–100 is more typical. Without more, I cannot say that the requested rate is excessive or not commensurate with the actual market value of the services rendered by plaintiff's counsel.

■ I agree with plaintiff that, under 20 U.S.C. § 1415(e)(4)(B), all costs and out of pocket expenses reasonably incurred are compensable to the prevailing party. This interpretation is supported by the legislative history of HCPA and is consistent with Fed.R.Civ.P. 54(d). Section 1920 of Title 28

sets forth no strict pleading requirement which would dictate a contrary result. Accordingly, plaintiff recovers the submitted filing and copy costs of $127.00.

The final area of dispute relates to the compensability of plaintiff's pursuit of attorney fees. These costs, as a general proposition, are recoverable. *See, e.g., Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir.1986). The costs associated with oral argument on the motion for attorney fees may also be awarded. The District's major complaint in this regard is that plaintiff's counsel, during negotiations on the fee issue, did not provide the District with an itemization of time spent on each of the various tasks performed.

To the extent that good faith negotiation may have eliminated the need for litigation on the fee issue, I find that plaintiff's counsel was a major factor in the collapse of that most important process. Indeed, if at all possible, "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. Plaintiff's counsel could have easily provided the requested documentation. To be sure, we know now that the District probably would have contested the same charges to which it objected in court, but compliance, for all plaintiff's counsel knew with certainty at the time, may have settled the matter. Accordingly, from a total award of $8,259.20, I deduct $500.00, which represents the equivalent of four hours' compensation for time spent in pursuit of attorney fees after November 5, 1987, the date on which the District requested the documentation. The total amount awarded is thus $7,759.20.

### Conclusion

Plaintiff was the prevailing party within the meaning of 20 U.S.C. § 1415(e)(4)(B). Accordingly, she is entitled to reasonable attorney fees. Because plaintiff's efforts to obtain injunctive relief were significantly related to the ultimate success achieved, the fees associated therewith are compensable. Plaintiff also recovers costs and out of pocket expenses, including federal court filing fees and photocopy costs. Finally,

except as indicated hereinabove, plaintiff is awarded the costs relative to time spent in establishing entitlement to attorney fees under HCPA.